IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

DONALD A. BURNS                )
                               )
          Plaintiff,           )
                               )
     v.                        )     1:02cv1326(JCC)
                               )
WALTER C. ANDERSON, *et al.,*  )
                               )
          Defendants.          )

## M E M O R A N D U M   O P I N I O N

This matter comes before the Court on Plaintiff's application for attorneys' fees and litigation expenses. Plaintiff seeks an award of $891,678.50 in attorneys' fees and $77,211.33 in expenses. For the following reasons, the Court will award Plaintiff with $303,175.67 in attorneys' fees and $74,659.07 in litigation expenses.

### I.  Background

On March 1, 2000, Plaintiff, Donald A. Burns, entered into a Promissory Note ("the Note") with Walter C. Anderson, Gold & Appel Transfer, S.A. ("Gold"), and Revision, LLC ("Revision"), under which Anderson, Gold, and Revision agreed to repay Burns the principal amount of $14,310,400.00 plus interest by December 31, 2001. On November 1, 2001, Anderson, Gold, Revision, and Entree International Limited ("Entree")[1] entered into an Amended

---

[1] The Court will refer to these four entities collectively as "Defendants." A fifth pledgor, the Foundation for the International Non-Governmental Development of Space, also entered into the Pledge Agreement but was not a party to this litigation.

and Restated Pledge Agreement ("the Pledge Agreement") in which Defendants pledged certain of their assets to Burns as security for the performance of Defendants' obligations under the note. Among other things, Revision pledged 1,179,732 shares of Covista Communications, Inc. ("Covista") stock, and Entree pledged its interest in Red Tulip, LLC ("Red Tulip").[2]

On December 31, 2001, the parties agreed to extend the due date until February 11, 2002 and provided that Defendants would pay $13,895.480.20 to Burns on that date.  Defendants defaulted, however, and pursuant to Section 8.3 of the Pledge Agreement, Burns became entitled to take ownership of the Covista stock in a private sale.  On August 12, 2002, Russell Bregman, a Valuation Services employee retained by Burns, valued the Covista shares at $5,635,403.00.  Burns filed the complaint in this action on September 5, 2002 and transferred ownership of the Covista shares to himself on September 6, 2002.

Burns's complaint sought judgment against Defendants for $15,979,811.40, less credit for the value of the Covista shares.  Burns also requested the Court to order Anderson and Entree to sign a blank assignment of the Red Tulip interest and to take any and all other steps necessary or advisable to sell the Red Tulip interest at a public auction.  Third, Burns sought

---

[2]Entree owned an 88% interest in Red Tulip.  The other 12% interest was held by an individual named Junia Hissa Neiva.  Red Tulip's sole asset was a building in New York City.

to enjoin Anderson and Entree from permitting any conversion of Neiva's Red Tulip interest without Burns's consent.[3]  Fourth, Burns asked the Court to declare null and void an agreement between Entree and Neiva to reduce the amount of Entree's capital contribution to Red Tulip.[4]  Defendants raised affirmative defenses pertaining to unclean hands, equitable estoppel, waiver, and lack of consideration.

On March 31, 2003, the Court partially granted Burns's motion for summary judgment, finding that summary judgment was appropriate on the affirmative defenses of unclean hands, equitable estoppel, and waiver.  Thereafter, the Court held a two-day bench trial on Burns's claims and the remaining affirmative defense.  On August 1, 2003, the Court issued a Memorandum Opinion and Order granting judgment in favor of Burns on all counts.  More specifically, the Order stated that: (1) judgment was in favor of Burns and against the Defendants in the amount of $11,633,874.87; (2) Anderson and Entree were to sign a blank assignment of their interest in Red Tulip and transfer this blank assignment to Burns within ten days; (3) any purported

---

[3]This claim for relief arose from a series of events in which Anderson, on Entree's behalf, agreed that Neiva could convert part of her Red Tulip interest into the right to own the penthouse condominium in the Red Tulip building.  Burns did not consent to any such agreement and alleged that Anderson's actions violated Section 6.1(b) of the Pledge Agreement, which required Burns's prior written agreement to any action taken by Entree or Anderson that would materially impair the value of the Red Tulip interest.

[4]This claim arose from an amendment to the Red Tulip operating agreement executed by Entree and Neiva on November 30, 2001 to reduce Entree's capital contribution from $4,800,000.00 to $480,000.00.

consents given by Anderson or Entree to Neiva were null and void; and (4) any amendments to the Red Tulip operating agreement were null and void.

After the Order was carried out and Burns took possession of the blank assignment of the Red Tulip interest, Burns filed for an injunction against Anderson and Entree, seeking to prohibit them from acting to convert Neiva's Red Tulip interest into the right to own any unit or portion of the Red Tulip property without Burns's consent or otherwise in violation of the terms of the Order.  On November 14, 2003, the Court issued a Memorandum Opinion and Order granting the injunction sought by Burns.  The Court found that a transfer of the Red Tulip penthouse to Neiva would result in a permanent reduction of the value of the Red Tulip interest that Burns sought to liquidate by public sale in satisfaction of the judgment.  The Court also concluded that with the value of the Red Tulip interest impaired, Defendants would likely have been otherwise unable to satisfy Burns's judgment against them.  Hence, the Court permanently enjoined Anderson and Entree from acting to convert Neiva's Red Tulip interest into the penthouse condominium.

Following the imposition of the permanent injunction, Defendants appealed to the United States Court of Appeals for the Fourth Circuit, arguing that Burns did not dispose of the Covista

-4-

stock in accordance with the New York Uniform Commercial Code, that this Court erred in admitting Russell Bregman's testimony, and that this Court erred in adopting the Valuation Services report generated by Bregman.  On December 15, 2004, the Fourth Circuit affirmed this Court.

On March 30, 2005, pursuant to Section 6.5 of the Pledge Agreement, Burns filed a motion for an award of attorneys' fees and litigation expenses.[5]  Burns seeks a total of $891,678.50 in attorneys' fees and $77,211.33 in expenses.  His motion is currently before the Court.

## II.  Standard of Review

According to the Supreme Court, "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  This calculation, which is also known as the lodestar figure, should include consideration of the following factors:

    (1)  the time and labor required;
    (2)  the novelty and difficulty of the questions;

---

[5] Anderson filed an opposition to Burns's motion on April 11, 2005.  On April 28, 2005, the Court granted Defendants additional time to respond to Burns's motion because of the withdrawal of Defendants' counsel.  The Court ordered Defendants to respond to Burns's motion within thirty days after the retention of new counsel.  Having received no response from Gold, Revision, or Entree, on March 31, 2006, the Court ordered Defendants to show cause why Burns's motion should not be granted.  Neither Gold, Revision, nor Entree have responded.  Nevertheless, Anderson's opposition provides a sufficient basis for the Court to judge the merits of Burns's motion with respect to each Defendant.

(3)  the skill requisite to properly perform the legal
     service;
(4)  the preclusion of other employment by the attorney
     due to acceptance of the case;
(5)  the customary fee;
(6)  whether the fee is fixed or contingent;
(7)  the time limitations imposed by the client or the
     circumstances;
(8)  the amount involved and the results obtained;
(9)  the experience, reputation, and ability of the
     attorneys;
(10) the "undesirability" of the case;
(11) the nature and length of the professional
     relationship with the client; and
(12) awards in similar cases.

*Daly v. Hill*, 790 F.2d 1071, 1075 n.2 (4th Cir. 1986); *Barber v.*

*Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978).  A

proper computation of the lodestar figure will constitute the

"reasonable fee" in most cases.  *See id.* at 1078.

### III.  Analysis

       Section 6.5 of the Pledge Agreement provides that

Defendants

       will pay to [Burns] from time to time on demand any and
       all costs and expenses, including reasonable attorneys'
       fees and expenses, paid or incurred by or on behalf of
       [Burns] in connection with this Agreement, the Existing
       Pledge Agreement or the Note or in connection with any
       modification, amendment, alteration or enforcement of
       this Agreement, the Existing Pledge Agreement or the
       Notes or the collection of any amount payable by any
       Pledgor hereunder or under the Existing Pledge Agreement
       or the Note . . . .

(Decl. of Michael E. Wiles at ¶ 2.)  Pursuant to this provision,

Burns requests $891,678.50 in attorneys' fees and $77,211.33 in

expenses.  These amounts reflect fees billed and expenses charged

by Burns's counsel, Debevoise & Plimpton LLP ("Debevoise"),

-6-

starting with Defendants' default under the Pledge Agreement in February 2002, through trial on the merits and Defendants' appeal to the Fourth Circuit, and continuing with post-judgment efforts to liquidate collateral and collect on the judgment.  By Debevoise's records, these efforts concluded on December 31, 2004.

A.  Anderson's Request for a Stay of these Proceedings

On February 26, 2005, Anderson was arrested and criminally charged in the United States District Court for the District of Columbia with a twelve-count indictment alleging tax evasion, obstruction of the administration of the internal revenue laws, and fraud.  At the present time, this criminal prosecution is ongoing.  *See generally United States v. Anderson*, No. 05-0066, 2006 U.S. Dist. LEXIS 49939 (D.D.C. July 24, 2006) (granting in part and denying in part Anderson's motion for a bill of particulars).  Because of these pending criminal charges and various other civil actions pending against Anderson in federal and state courts, Anderson has requested a stay of these proceedings.

Federal district courts have broad discretion to stay an action pending the resolution of independent proceedings that may bear upon the case.  *See Landis v. N. American Co.*, 299 U.S. 248, 254 (1936).  This "power to stay proceedings is incidental to the power inherent in every court to control the disposition

of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Id.*  In some circumstances, "[f]ederal courts have deferred civil proceedings pending the completion of parallel criminal prosecutions when the interests of justice seemed to require such action." *United States v. Kordel*, 397 U.S. 1, 12 (1970).  In the words of the Fifth Circuit, "[i]n 'special circumstances,' . . . a district court should stay one of the proceedings pending completion of the other to prevent a party from suffering substantial and irreparable prejudice." *Sec. and Exch. Comm'n v. First Fin. Group of Tex., Inc.*, 659 F.2d 660, 668 (5th Cir. 1981).

In this case, Anderson has cited no special circumstances that would give the Court reason to stay these proceedings.  There is no indication, for example, that pressing forward with the instant civil proceedings would require Anderson to incriminate himself with respect to the criminal matter.  *See, e.g., United States v. U.S. Currency*, 626 F.2d 11, 14, 17 (6th Cir. 1980) (stating that a district court could properly stay civil forfeiture proceedings where the civil action posed "genuine threats to appellees' privilege against self-incrimination"); *Wehling v. Columbia Broad. Sys.*, 608 F.2d 1084, 1087 (5th Cir. 1979) (holding that the district court abused its discretion in declining to stay a civil libel action where the plaintiff had validly claimed his Fifth Amendment

privilege in response to the defendant's discovery requests and where there was a pending, related criminal investigation). Anderson has only vaguely asserted that "[r]equiring his participation in this case at this time would substantially prejudice him and would impair his ability to expend the required efforts to defend himself in a criminal trial." (Def.'s Opp'n to Plf.'s Application for Att'ys Fees and Expenses, at 8.)  This contention is belied by the fact that Anderson has already sufficiently responded to Plaintiff's fee application on the merits.

In essence, Anderson seeks an indefinite stay of these proceedings.  He has asserted, without any substantiation, that other civil actions are currently pending against him in federal and state courts and that he anticipates further civil actions being filed against him.  In light of the speculative nature of Anderson's claim of prejudice and the lack of an indication that advancing the matter *sub judice* would impair Anderson's ability to defend himself in this case or in the criminal case, the Court will deny his request for a stay.

B.  Attorneys' Fees

The burden of proving the reasonableness of the claimed fees rests with the moving party.  *See Daly*, 790 F.2d at 1079. Burns's submissions include a document summarizing the hours billed and hourly rate of each Debevoise employee, an eighty-

seven page timekeeping report containing very brief descriptions of how the billed hours were spent,[6] the declaration of a Debevoise partner who generally summarizes the work performed on Burns's case, and a brief legal memorandum that, among other things, cites several cases as evidence of the market rates for legal services in New York City.  In spite of his burden of proof, Plaintiff has made little attempt to address the twelve factors enumerated by the Fourth Circuit in *Daly* and *Barber*. Nevertheless, the Court is bound to evaluate the reasonableness of the claimed fees in light of these factors and will do so to the extent that it can.

### 1.  The Novelty and Difficulty of the Questions

There were several legal issues in the case at hand. After the Court granted summary judgment on three of the affirmative defenses raised by Defendants, the two-day trial of this matter required resolution of four essential issues: 1) whether an extension of the loan's maturity date and a bookkeeping transfer made by Burns constituted sufficient consideration to support the Note and the Pledge Agreement; 2) whether the method, manner, and timing of Burns's private sale of the Covista shares were commercially reasonable; 3) whether Entree's consent for Neiva to convert part of her Red Tulip

---

[6]This report, which is Exhibit B to the Wiles Declaration, will hereinafter be referred to by citing the name of the individual who performed the work and the date that the hours were billed.

-10-

interest into the right to own a penthouse condominium materially impaired the value of Entree's Red Tulip interest; and 4) and whether Burns consented to a reduction in the amount of Entree's capital contribution to Red Tulip.  Following the trial's conclusion, Burns filed for a permanent injunction prohibiting Defendants from acting to transfer Neiva's Red Tulip interest into the penthouse condominium.

Despite the numerosity of the issues in this case, the Court finds that none of the questions presented were especially difficult.  The issues presented at trial were not particularly novel or complex, but rather required the application of straightforward precedent, the determination of the reliability of Plaintiff's expert witness, and the evaluation of the credibility of Burns and Anderson as witnesses.  As for Burns's post-trial motion for an injunction, the issues turned largely on the question that the Court had considered at trial, namely, whether the transfer of the penthouse condominium would materially impair the value of Entree's Red Tulip interest.

Likewise, the issues presented by Defendants' appeal were neither novel nor difficult.  Defendants presented only three questions to the Fourth Circuit for review: 1) the commercial reasonableness of Burns's disposal of the Covista stock; 2) the reliability of Burns's expert witness; and 3) the propriety of this Court's reliance on the expert witness's actual

sales valuation.  The parties had already briefed and developed these issues before this Court, and none of these issues broke new precedential ground or were especially complex.  In sum, this case did not present particularly novel or difficult legal questions.

### 2.  The Time and Labor Required

Between February 2002 and December 31, 2004, Debevoise attorneys, legal assistants, and support staff billed a total of 2,376.10 hours in connection with the enforcement of the Note and the Pledge Agreement and the collection of funds due thereunder. This time consisted not only of litigation preparation and the two-day bench trial before this Court, but also of efforts taken in anticipation of the liquidation of the Covista stock, post-trial research of various methods of enforcing Burns's judgment against Defendants, post-trial investigation of Defendants' U.S.-based and overseas assets, and efforts to seize several of Defendants' assets.  To be sure, this case required a significant amount of work due to the existence of multiple entities under Anderson's control, the nature of the collateral, and Defendants' undertakings to render collection of Burns's judgment difficult or impossible.  The Court finds, however, that 2,376.10 hours was considerably more time and labor than was necessary for satisfactory resolution of the matter.  The excess can readily be attributed to overstaffing.

-12-

This Court is to exclude from its lodestar calculation hours that were not reasonably expended.  *See Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).  In *Hensley*, the Supreme Court instructed that a fee applicant is to exercise "billing judgment" and "exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Id.*  If the fee applicant fails to exercise billing judgment, the Court will exercise billing judgment for the applicant.  *See Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999).  The Fourth Circuit has stated that "[p]roperly reducing allowable hours because of overstaffing of attorneys is not an abuse of discretion, and indeed falls soundly within the district court's proper discretion in determining an attorney's fee award."  *Trimper v. City of Norfolk, Va.*, 58 F.3d 68, 76-77 (4th Cir. 1995).

No less than nine partners, three counsels, twenty-two associates, one summer associate, ten legal assistants, and thirty-one various other support staff members performed work on this case.  Of course, the mere fact that seventy-six individuals worked on this matter is not, in and of itself, sufficient to prove overstaffing.  The seventy-six individuals performed greatly varying degrees of work on the case.  For example, the nine partners billed 428.50 hours, but five of these individuals

had an almost negligible share in this total.[7]  The three
counsels billed only 8.5 hours between them.[8]  The twenty-two
associates billed a total of 1,361.74 hours, but fourteen
individuals billed 1,349.54 of these hours.[9]  Counting only those
attorneys who billed five hours or more in connection with this
matter, nineteen attorneys billed 1,781.22 of the 2,376.10 hours.
Two legal assistants[10] and two freelance legal assistants[11] billed
370.72 of the remaining 594.88 hours.  Thus, twenty-three
individuals billed 2,151.94, or 90.6%, of the 2,376.10 hour
total.

There is nothing inherently unreasonable about having
multiple attorneys perform the work on this case, and Plaintiff
could be entitled to compensation for the work of each if his

---

[7]Michael E. Wiles billed 314.43 hours, Robert F. Quaintance billed 68.33 hours, Steven M. Alden billed 32.42 hours, Seth L. Rosen billed 10.90 hours, and Peter J. Loughran billed 1.23 hours.  None of the remaining four partners who worked on this case billed more than half an hour.

[8]Zarina Bhesania billed 5.6 hours, Timothy K. Beeken billed 2.6 hours, and Barbara W. Friedman billed 0.3 hours.

[9]Sean Mack billed 387.3 hours, Maria Lin billed 330.5 hours, Jennifer R. Cowan billed 142.13 hours, Gary E. Murphy billed 134.85 hours, Melissa Sobel billed 128.82 hours, Ellen Marcus billed 104.50 hours, Nicola C. Port billed 26.04 hours, Sanjukta Paul billed 25 hours, Jed Coleman billed 17.3 hours, Mateo Taussig-Rubbo billed 15.5 hours, Howard Yinghao Yang billed 13 hours, Donna Krouzman billed 9.2 hours, Cecile Beurrier billed 8.8 hours, Hillel Jacobson billed 6.6 hours, Ada Fernandez Johnson billed 2.8 hours, William Rhee billed 2.1 hours, Xuan Zhang billed 2 hours, Chong Alexandra Friedman billed 1.6 hours, Debbie Klein billed 1.5 hours, Steven Friel billed 0.95 hours, Christopher J. Robinson billed 0.95 hours, and V. Mary Abraham billed 0.3 hours.

[10]Gregory A. Senn billed 133.92 hours, and David K. Styles billed 121.5 hours.

[11]Kenneth Muller billed 72.6 hours, and an unnamed freelance legal assistant billed 42.7 hours.

submissions "reflect[ed] the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation." *See Barnes*, 168 F.3d at 432.  The documents before the Court, however, do nothing of the sort.  Even if the Court excludes from its analysis those individuals who were only tangentially involved, Plaintiff has made no attempt whatsoever to demonstrate why the use of more than nineteen attorneys was necessary.  There is no evidence before the Court to suggest that each of these individuals contributed distinct backgrounds or expertise to the matter or that the workload was so burdensome at any particular time to necessitate the use of so many attorneys. The Court finds that this was simply a case of unnecessary overstaffing.

In most cases, the addition of extra personnel requires additional time to be spent acquainting the new attorneys with the facts of the case, to the extent necessary, and coordinating and managing the activities of the larger group.  This natural consequence is clearly evident throughout Debevoise's timekeeping report.  There are numerous entries that pertain to some form of communication solely between Debevoise attorneys.[12]  Where the

---

[12]See, e.g., G. Murphy, 3/6/02 ("Conference call with R. Quaintance, J. Cowan; conversation with J. Cowan." - 0.6 hours); M. Sobel, 4/7/03 ("Meet with M. Wiles and S. Mack to discuss trial.  Review Order." - 0.8 hours); R. Quaintance, 7/27/03 ("Telephone conversation with S. Mack re: Covista Share sale." - 0.2 hours); M. Wiles, 8/22/03 ("Cnf. RQ, Seth Rosen, Cecille B., SM regarding tax issues relating to enforcement of judgment and taking ownership of Red Tulip; T. DB re same and re August 28 hearing." - 0.9 hours); Z. Bhesania, 3/24/04 ("Telcon to Sean Mack; instructions to J. Coleman." - 0.7 hours).

fee applicant makes no showing that the employment of numerous attorneys was necessary, the Court must conclude that at least a portion of the inevitable intragroup communication was superfluous.

Unfortunately, given the deficient nature of Plaintiff's submissions, it is impossible to determine which intragroup communications were necessary and which were not. Many of the entries on the timekeeping report do not identify the subject matter of the communication; thus, the Court is left to speculate as to the necessity of the communication.[13]  A multitude of other entries bundle the intragroup communications with other tasks, and so the Court cannot determine the amount of time that was spent on unnecessary coordination.[14]

Because the Court does not have sufficient information to excise specific portions of Plaintiff's fee application, the

---

[13]See, e.g., R. Quaintance, 3/5/02 ("Telephone conversation with G. Murphy, J. Cowan." - 0.4 hours); G. Murphy, 3/7/02 ("Conversation with J. Cowan." - 0.3 hours); M. Wiles, 3/19/02 ("T. Rob Quaintance." - 0.2 hours); J. Cowan, 3/20/02 ("Mtg w/ G. Murphy and M. Wiles re: next steps." - 0.7 hours).

[14]See, e.g., M. Wiles, 5/6/02 ("T. RQ; T. J. Cowan re meeting; review memo and documents; cnf. RQ, JC, GM re status and next steps; T. Rob Quaintance." - 1.6 hours); G. Murphy, 9/4/02 ("Conversations with R. Quaintance, J. Cowan; letter to S. McGuinness; calls to D. Korsakoff, J. Touhy regarding LLC matters; draft letter to various parties regarding change in manager of Red Tulip; calls to office of J. Rachline; call to I. Freilich; fax to various entities." - 6.1 hours); H. Jacobson, 10/3/02 ("Meet with Seth Rosen; look at cancellation of indebtedness issue; call with David Schnabel; call with Rob Quaintance." - 3.1 hours); M. Lin, 3/29/03 ("Met with M. Wiles and S. Mack re: tasks before trial.  Summarized Anderson deposition.  Pulled cases on private sales." - 6 hours); C. Beurrier, 8/22/03 ("Meeting w/ S. Rosen, B. Quaintance, M. Wiles, G. Murphy and S. Mack re: foreclosure, research re: NYC and NYS tax issues, meetings w/ S. Rosen re: the same, email to B. Quaintance and M. Wiles re: the same." - 3.7 hours).

Court must employ a percentage cut.[15]  The Fourth Circuit has used such an approach in the past, where it found the fee applicant's submissions to be inadequate.  *See Spell v. McDaniel*, 852 F.2d 762, 767-68 (4th Cir. 1988) ("Because the burden is on the party seeking the fee award to establish the reasonableness of the hours spent, where it is necessary for the court to approximate because of counsel's inadequate recordkeeping we consider it just to do so in favor of the party contesting the fee award.") (internal citation omitted).

The Court must take care to formulate a percentage cut that accounts only for the background research, instruction, coordination, supervision, and training that resulted from unnecessary overstaffing.  Upon consideration of Plaintiff's motion and the supporting documentation, the Court finds that a fifteen-percent cut is sufficient to compensate for the inflation of billable hours caused by the logistical hurdles that resulted from unnecessary overstaffing.  Despite the fact that this case involved legal issues that were not especially novel or complex, the Court is mindful that the case presented numerous legal questions, various practical obstacles to the realization and collection of Burns's judgment, and vigorous resistance on

---

[15]It would be inappropriate to give Plaintiff the opportunity to submit more detailed documentation in support of his fee application.  The Fourth Circuit has explicitly disapproved of such an approach.  *See Morris v. Wachovia Sec., Inc.*, 448 F.3d 268, 284 (4th Cir. 2006) ("Requiring another round of fee submissions here would effectively encourage rather than curtail satellite litigation over fees.").

-17-

several levels by Defendants.  For these reasons, it was clearly appropriate to employ several attorneys, although Plaintiff has not made any attempt to demonstrate why it was necessary to staff his case with nineteen attorneys, four legal assistants, and many others making more minor contributions.  After considering the complexity of the case, the numerous issues presented, and the inefficiencies caused by unnecessary overstaffing, the Court finds that Plaintiff could have reached an entirely favorable resolution in 2019.69 hours.[16]

### 3.  The Skill Requisite to Properly Perform the Service

The Court has already discussed in depth the numerous legal questions and the other issues presented by this case.  In addition to general litigation and trial skills, this case required knowledge of various options for the preservation and liquidation of Defendants' collateral and for the enforcement of Burns's judgment.  In those respects, the Court finds that Plaintiff's counsel provided and in some cases exceeded the required skill level.  Furthermore, Plaintiff's records show that Debevoise made efforts to ensure that junior attorneys and support staff members performed the majority of the responsibilities where appropriate.  This is demonstrated by the

---

[16]Due to the nature of Plaintiff's submissions, it is also impossible to determine which attorneys billed time solely as a result of overstaffing. Thus, the Court cannot apply the fifteen percent reduction to the number of hours billed by any particular attorney or group of attorneys.  As such, the Court is forced to simply multiply the reduced time by the "blended hourly rate" set forth below.

fact that partners and counsel billed only 18.4% of the total number of hours worked on this matter and only 24.3% of the number of hours billed by attorneys.  In light of the higher billing rates of the former and the nature of the issues in this case, Debevoise's staffing decisions were clearly appropriate in this regard.

### 4.  The Attorneys' Opportunity Costs in Pressing the Instant Litigation

Plaintiff has not submitted any evidence pertaining to this factor.

### 5.  Experience, Reputation, and Ability of the Attorneys

Plaintiff has not submitted the *curricula vitae* of any of his attorneys or any other evidence on this factor.  Thus, the Court has no information about the backgrounds of the attorneys, other than the fact that nine of the attorneys who worked on this matter were partners, three were counsel, and twenty-two were associates.  While Plaintiff's failure to submit evidence pertaining to this factor constitutes an appropriate basis for a reduction in the amount of fees sought, *see Cleveland Demolition Co., Inc. v. Azcon Scrap Corp.*, 827 F.2d 984, 988 (4th Cir. 1987), the Court's calculation of the appropriate hourly rates, *see infra* Section III(B)(6), will sufficiently account for the lack of evidence on this factor.

6.  The Customary Fee

Plaintiff's attorneys billed their time in the following amounts and at the following rates:

| Individual | Hours | Hourly Rate | Billed Amount |
|---|---|---|---|
| **Partners** | | | |
| Steven M. Alden | 32.42 | $695.64 | $22,552.64 |
| Andrew N. Berg | 0.50 | $685.00 | $342.50 |
| Colin Bogie | 0.19 | $553.37 | $105.14 |
| Peter J. Loughran | 1.23 | $620.69 | $763.45 |
| Robert F. Quaintance | 68.33 | $687.54 | $46,979.59 |
| Seth L. Rosen | 10.90 | $692.20 | $7,545.00 |
| David H. Schnabel | 0.30 | $580.00 | $174.00 |
| Michael E. Wiles | 314.43 | $693.91 | $218,186.66 |
| Bruce E. Yannett | 0.20 | $664.60 | $132.92 |
| **Counsel** | | | |
| Timothy K. Beeken | 2.60 | $523.46 | $1,361.00 |
| Zarina Bhesania | 5.60 | $525.00 | $2,940.00 |
| Barbara W. Friedman | 0.30 | $515.00 | $154.50 |
| **Associates** | | | |
| V. Mary Abraham | 0.30 | $465.00 | $139.50 |
| Cecile Beurrier | 8.80 | $425.00 | $3,740.00 |
| Jed Coleman | 17.30 | $191.04 | $3,305.00 |
| Jennifer R. Cowan | 142.13 | $437.01 | $62,112.88 |
| Chong Alexandra Friedman | 1.60 | $385.00 | $616.00 |
| Steven Friel | 0.95 | $304.11 | $288.90 |
| Hillel Jacobson | 6.60 | $385.00 | $2,541.00 |
| Ada Fernandez Johnson | 2.80 | $410.00 | $1,148.00 |

| Debbie Klein | 1.50 | $330.00 | $495.00 |
| Donna Krouzman | 9.20 | $260.00 | $2,392.00 |
| Maria Lin | 330.5 | $282.57 | $93,389.39 |
| Sean Mack | 387.30 | $408.40 | $158,174.50 |
| Ellen Marcus | 104.50 | $394.66 | $41,242.19 |
| Gary E. Murphy | 134.85 | $435.89 | $58,779.77 |
| Sanjukta Paul | 25.00 | $250.00 | $6,250.00 |
| Nicola C. Port | 26.04 | $305.10 | $7,944.70 |
| William Rhee | 2.10 | $345.00 | $724.50 |
| Christopher J. Robinson | 0.95 | $304.11 | $288.90 |
| Melissa Sobel | 128.82 | $439.98 | $56,678.84 |
| Mateo Taussig-Rubbo | 15.50 | $240.00 | $3,720.00 |
| Howard Yinghao Yang | 13.00 | $160.00 | $2,080.00 |
| Xuan Zhang | 2.0 | $250.00 | $500.00 |

In addition, Debevoise billed rates of $158.01 per hour for the work of one summer associate, $100.00 and $97.00 per hour for the work of two freelance legal assistants, and rates ranging from $185.00 to $145.00 per hour for the work of eight legal assistants. Taking into account the work of these individuals and all other Debevoise employees who performed work on Plaintiff's case, the "blended hourly rate" for Debevoise's work is $375.27.[17]

_____

[17]Plaintiff arrived at this "blended hourly rate" by dividing the total amount of fees sought ($891,678.50) by the total number of hours expended (2,376.1) in connection with enforcing the terms of the Pledge Agreement and collecting the amounts due under the Note. (*See* Mem. in Supp. of Plf.'s Application for Att'ys Fees and Expenses, at 6.)

Plaintiff has cited several cases as evidence that the above rates are in accord with the market rate for legal services in New York City. *See, e.g.,* *Auscape Int'l v. Nat'l Geographic Soc'y*, No. 02-6441, 2003 U.S. Dist. LEXIS 13846, at *9 (S.D.N.Y. Aug. 6, 2003) (approving hourly rates of $450.00 to $495.00 for partners, $425.00 to $460.00 for senior associates, $215.00 to $320.00 for junior associates, and $130.00 for a paralegal); *Sante Fe Natural Tobacco Co., Inc. v. Spitzer*, Nos. 00-7274, 00-7750, 2002 U.S. Dist. LEXIS 5384, at *18-20 (S.D.N.Y. Mar. 29, 2002) (approving hourly rates of $500 for a partner, $180 to $330 for associates, and $135 to $145 for paralegals and clerks). While Debevoise's rates are indeed on par with what seems to be the prevailing market rates in New York City, that fact simply does not figure into this Court's calculus under the applicable Fourth Circuit precedent.

In *Rum Creek Coal Sales v. Caperton*, 31 F.3d 169 (4th Cir. 1994), the Fourth Circuit held that "[t]he relevant market for determining the prevailing rate is ordinarily the community in which the court where the action is prosecuted sits." *Id.* at 175. Furthermore, "[r]ates charged by attorneys in other cities . . . may be considered when 'the complexity and specialized nature of a case may mean that no attorney, with the required skills, is available locally,' and the party choosing the attorney from elsewhere acted reasonably in making the choice."

-22-

*Id.* (quoting *Nat'l Wildlife Fed'n v. Hanson*, 859 F.2d 313, 317 (4th Cir. 1988)).  In *Yamaha Motor Corp., U.S.A. v. Jim's Motorcycle, Inc.*, 381 F. Supp. 2d 499 (E.D. Va. 2005), this Court elaborated on the burden of proof required to establish entitlement to out-of-locality rates:

> Obviously, the test articulated by the Court of Appeals imposes, on the fee applicant, the burden to show that a particular case for which out-of-locality rates are sought was one of such complexity and specialized nature that no attorney with the required skills was available locally and that the fee applicant was reasonable in choosing an attorney from out of the forum.

*Id.* at 504.  In this case, Plaintiff has not attempted to make a showing as to either element of this test.  Thus, the Court finds no reason to deviate from the general rule articulated in *Rum Creek*.

In establishing the reasonableness of a requested rate, "the burden is on the fee applicant to produce satisfactory evidence--in addition to the attorney's own affidavits--that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  *Blum v. Stenson*, 465 U.S. 886, 896 (1984).  Despite this burden, Plaintiff has presented no evidence of the prevailing market rates within Alexandria, Virginia.  As such, the Court will rely on its own

knowledge and experience, as well as relevant precedent from this locality.[18]

In *American Canoe Association v. United States Environmental Protection Agency*, 138 F. Supp. 2d 722 (E.D. Va. 2001), this Court approved hourly rates ranging from $200.00 to $250.00 for attorneys with experience equivalent to that of a partner, $100.00 to $150.00 for attorneys with experience equivalent to that of an associate, and $55.00 to $85.00 for paralegals. *Id.* at 745-47. *See also In re Hall*, 296 B.R. 707, 708 (Bankr. E.D. Va. 2002) (approving a rate of $75.00 per hour for paralegal time). *American Canoe* involved litigation under the Clean Water Act, Endangered Species Act, and Administrative Procedures Act in which the plaintiffs set forth numerous claims for relief presenting issues that were of similar complexity as the questions in the instant case. *See generally American Canoe*, 138 F. Supp. 2d at 727-29. Also, as in this case, the Plaintiffs in *American Canoe* achieved highly successful results. *See id.* at 739-40. Accordingly, the Court finds that the rates approved in *American Canoe* are appropriate for comparison with this case.

---

[18]The Court finds that reliance on precedent to establish the prevailing market rates within Alexandria is an appropriate method in this case. In his application for attorneys' fees, Plaintiff used this method to establish the prevailing New York market rates. Additionally, the Fourth Circuit has approved the use of precedent to determine the appropriate market rates for attorneys' fees. *See Cooper v. Paychex, Inc.*, Nos. 97-1543, 97-1645, 97-1720, 1998 U.S. App. LEXIS 21383, *40 (4th Cir. 1998).

Even a cursory review reveals that the prevailing market rates in Alexandria are consistently one-half to one-third of the rates charged by Debevoise.  While significant cuts of the claimed hourly rates are in order, the Court's ability to reach appropriate market rates for each Debevoise attorney and employee is hindered by the paucity of evidence pertaining to the experience, reputations, and abilities of these individuals.  The state of Plaintiff's documentation has again made an across-the-board cut the most feasible approach.  An appropriate rate for each individual who worked on this case can be reached by dividing the claimed hourly rate by 2.5.[19]  This yields the following rates:

| Individual | Hours | Adjusted Hourly Rate | Adjusted Billed Amount |
|---|---|---|---|
| Partners | | | |
| Steven M. Alden | 32.42 | $278.26 | $9,021.06 |
| Andrew N. Berg | 0.50 | $274.00 | $137.00 |
| Colin Bogie | 0.19 | $221.35 | $42.06 |
| Peter J. Loughran | 1.23 | $248.28 | $305.38 |
| Robert F. Quaintance | 68.33 | $275.02 | $18,791.84 |
| Seth L. Rosen | 10.90 | $276.88 | $3017.99 |

---

[19]This divisor is slightly lower than that which would be necessary to place the rates in this case directly on par with the rates approved in *American Canoe*.  The lower divisor obviously results in higher rates in this case, which the Court finds necessary to account, albeit approximately, for the fact that the litigation in *American Canoe* commenced in 1998, two years earlier than the commencement of the present litigation, and settled in 1999, five years earlier than the conclusion of the services charged for in this case.

| David H. Schnabel | 0.30 | $232.00 | $69.60 |
|---|---|---|---|
| Michael E. Wiles | 314.43 | $277.56 | $87,274.45 |
| Bruce E. Yannett | 0.20 | $265.84 | $53.17 |
| **Counsel** | | | |
| Timothy K. Beeken | 2.60 | $209.38 | $544.40 |
| Zarina Bhesania | 5.60 | $210.00 | $1,176.00 |
| Barbara W. Friedman | 0.30 | $206.00 | $61.80 |
| **Associates** | | | |
| V. Mary Abraham | 0.30 | $186.00 | $55.80 |
| Cecile Beurrier | 8.80 | $170.00 | $1,496.00 |
| Jed Coleman | 17.30 | $76.42 | $1,322.00 |
| Jennifer R. Cowan | 142.13 | $174.80 | $24,844.89 |
| Chong Alexandra Friedman | 1.60 | $154.00 | $246.40 |
| Steven Friel | 0.95 | $121.64 | $115.56 |
| Hillel Jacobson | 6.60 | $154.00 | $1,016.40 |
| Ada Fernandez Johnson | 2.80 | $164.00 | $459.20 |
| Debbie Klein | 1.50 | $132.00 | $198.00 |
| Donna Krouzman | 9.20 | $104.00 | $956.80 |
| Maria Lin | 330.5 | $113.03 | $37,355.75 |
| Sean Mack | 387.30 | $163.36 | $63,269.33 |
| Ellen Marcus | 104.50 | $157.86 | $16,496.79 |
| Gary E. Murphy | 134.85 | $174.36 | $23,511.91 |
| Sanjukta Paul | 25.00 | $100.00 | $2,500.00 |
| Nicola C. Port | 26.04 | $122.04 | $3,177.92 |
| William Rhee | 2.10 | $138.00 | $289.80 |
| Christopher J. Robinson | 0.95 | $121.64 | $115.56 |
| Melissa Sobel | 128.82 | $175.99 | $22,671.29 |
| Mateo Taussig-Rubbo | 15.50 | $96.00 | $1,488.00 |

| | | | |
|---|---|---|---|
| Howard Yinghao Yang | 13.00 | $64.00 | $832.00 |
| Xuan Zhang | 2.0 | $100.00 | $200.00 |
| **Freelance Assistant** | | | |
| Unnamed Individual | 42.70 | $40.00 | $1,708.00 |
| Kenneth Muller | 72.60 | $38.80 | $2,816.88 |
| **Summer Associate** | | | |
| Jason C. Ewart | 18.09 | $63.20 | $1,143.36 |
| **Legal Assistant** | | | |
| Michael Heaton | 0.80 | $72.00 | $57.60 |
| Martin G. Phillips | 2.50 | $70.00 | $175.00 |
| Sharon L. Popkin | 8.30 | $58.00 | $481.40 |
| Mark Roberts | 0.50 | $58.00 | $29.00 |
| Gregory A. Senn | 133.92 | $72.00 | $9,642.24 |
| Ilana B. Silberman | 1.70 | $64.00 | $108.80 |
| Kerry Stehn | 4.50 | $70.00 | $315.00 |
| David K. Styles | 121.50 | $74.00 | $8,991.00 |
| **Other** | | | |
| Eleanor J. Bateman | 0.47 | $76.59 | $36.00 |
| Philip Bryce | 0.70 | $74.40 | $52.08 |
| **Litigation Support** | | | |
| Brunilda Figueroa | 1.30 | $46.00 | $59.80 |
| John S. Rapacciuolo | 3.30 | $68.00 | $224.40 |
| Cyril Tyson | 12.30 | $53.60 | $659.28 |
| Jose L. Vialet | 0.50 | $46.00 | $23.00 |
| **Practice Group Administration** | | | |
| Mary Ann Canuso | 6.99 | $76.89 | $537.45 |
| **Library** | | | |
| Stephanie L. Berry Brock | 6.34 | $50.64 | $321.03 |

| Ronney Daniel | 0.40 | $64.40 | $25.76 |
|---|---|---|---|
| Alan Dubin | 4.71 | $68.15 | $321.00 |
| Christopher J. Lauzau | 9.40 | $79.62 | $748.39 |
| Helen M. Lawless | 3.41 | $81.20 | $276.89 |
| Aurelia A. Sanchez | 5.80 | $74.74 | $433.52 |
| Karen Telford | 2.70 | $52.82 | $142.60 |
| Richard Tremblay | 1.50 | $62.00 | $93.00 |
| Paul F. Volpe | 1.30 | $76.00 | $98.80 |
| **Managing Attorney** | | | |
| Nicole Aiken | 3.80 | $32.42 | $123.20 |
| Joan A. Baffa | 2.20 | $44.00 | $96.80 |
| Manuel L. Erosa | 17.17 | $74.58 | $1,280.61 |
| Marzena Hacker | 6.40 | $32.00 | $204.80 |
| Kevin Johnson | 5.50 | $46.00 | $253.00 |
| Tamara Kogan | 6.48 | $32.00 | $207.33 |
| Amy Kokot | 0.30 | $32.00 | $9.60 |
| Heather Lesfloris | 0.38 | $33.10 | $12.58 |
| Unnamed Individual | 4.20 | $31.20 | $131.04 |
| Dana L. Saunders | 2.60 | $32.62 | $84.80 |
| Nelson Vargas | 3.70 | $33.60 | $124.32 |
| Jeanette Weir | 5.00 | $32.26 | $161.28 |
| **Litigation Support Temps** | | | |
| Unnamed Individual | 14.00 | $37.20 | $520.80 |
| Unnamed Individual | 23.90 | $30.80 | $736.12 |
| **Legal Trainee** | | | |
| Andrew Holroyd | 1.20 | $74.00 | $88.80 |

These rates are fully consistent with the Court's
experience in regard to cases of similar complexity.  Using

Plaintiff's methodology, *see supra* footnote 17, the blended
hourly rate for all work done on this matter is $150.11.

### 7.  Time Limitations Imposed by the Client or Circumstances

Due to the numerous motions and compressed time
schedule of the Eastern District of Virginia, there were frequent
time limitations in this case, although they did not place any
undue burdens on counsel.  The number of hours billed, with the
appropriate reduction taken into account, is reasonably related
to the number of deadlines in this case.

### 8.  The Amount Involved and the Results Obtained

Plaintiff's complaint sought $15,979,811.40, less
credit for the value of the Covista shares.  Ultimately,
Plaintiff procured favorable rulings with respect to the
disposition and value of the Covista shares and obtained a
judgment for $11,633,874.87, the entire balance of the amount due
under the Note.  Plaintiff has also represented that Defendants
made various attempts to complicate Plaintiff's collection on
that judgment, although Plaintiff has not reported on the
ultimate success of his efforts to collect.  Regardless, by any
account, Plaintiff's efforts in this case were most effective.

### 9.  The Undesirability of the Case

Plaintiff has submitted no evidence pertaining to this
factor, and there was nothing inherent in this case that would
make it undesirable in the legal community.

> ### 10.  The Nature and Length of the Professional Relationship with the Client

Plaintiff has submitted no evidence on this factor.

> ### 11.  Awards in Similar Cases

Plaintiff has not submitted evidence on this factor, but based on the Court's experience, the sought amount of $891,678.50 is excessive when compared to awards in similar cases.  The Court's percentage cut of the number of hours worked and the reductions in the charged hourly fees are sufficient to account for this discrepancy.

> ### 12.  Conclusion

This case presented numerous issues and practical obstacles, as well as a high amount in controversy.  Counsel performed commendably throughout the substantive part of this litigation and secured complete relief for Plaintiff.  On the other hand, the issues presented in this case were not overly complex or novel, and it is clear that overstaffing resulted in many inefficiencies.  Additionally, Plaintiff's fee application is based on the market rates for legal services in New York City, which are much higher than the rates in Alexandria, Virginia. Therefore, the Court has imposed suitable cuts with respect to both the number of hours billed and the hourly rates charged. Upon multiplying the appropriate number of hours, 2019.69, by the reasonable "blended hourly rate" for this locality, $150.11, the

Court finds that Plaintiff is entitled to an award of $303,175.67 in attorneys' fees.

C.  Litigation Expenses

Finally, Plaintiff seeks an award of $77,211.33 for litigation expenses.  Plaintiff details the expenses sought as follows:

| Charges and Disbursements | Amount |
|---|---|
| Lawyer Travel | $7,491.41 |
| Telephone Toll Calls | $77.93 |
| Telephone Conferencing and Outside Vendors | $73.17 |
| Fax | $2,914.00 |
| D&P Messenger Charge | $401.25 |
| Express Deliveries and Outside Messengers | $2,242.20 |
| Duplicating and Binding | $10,392.34 |
| Outside Copying | $9,233.22 |
| Document Retrieval Service | $697.43 |
| Overtime FICA Expense | $51.27 |
| Postage | $277.64 |
| Lexis Services | $7,940.75 |
| Westlaw Services | $18,677.80 |
| Other Database Services and Research Information Services | $559.04 |
| Court Reporter Fees | $1,948.70 |
| Transcript Charges | $2,968.20 |
| Filing Fee | $560.00 |
| CT Corp. | $3,313.25 |
| Lawyer Out-of-Pocket | $882.05 |

| Conference Room Catering | $1,006.58 |
| Lawyer OT Expense - Meals | $618.63 |
| Lawyer OT Expense - Transportation | $2,844.89 |
| Administrative OT Expense | $359.68 |
| Secy/Steno Overtime Expense | $892.25 |
| Overtime Meal Expense | $45.00 |
| Research Information Services | $328.31 |
| Witness Fee & Expenses | $83.00 |
| Network Word Processing and Proofreading | $651.60 |

The parties' dispute centers mainly on the appropriateness of including the cost of online legal research within the award for litigation expenses. Anderson has cited cases from the Seventh and Eighth Circuits in which those courts disallowed awards for the costs of computer-based legal research. *See Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 409 (7th Cir. 2000) ("Computer research charges are considered a form of attorneys' fees. . . . As a form of attorneys' fees, the charges associated with such research are not separately recoverable expenses."); *Standley v. Chilhowee R-IV Sch. Dist.*, 5 F.3d 319, 325 (8th Cir. 1993) ("[T]he law of this Circuit is that computer-based legal research must be factored into the attorneys' hourly rate, hence the cost of the computer time may not be added to the fee award.").

The Court respectfully disagrees with this view and finds persuasive the following pronouncement from the Second Circuit:

> [T]he use of online research services likely reduces the number of hours required for an attorney's manual search, thereby lowering the lodestar, and that in the context of a fee-shifting provision, the charges for such online research may properly be included in a fee award.  If [the firm] normally bills its paying clients for the cost of online research services, that expense should be included in the fee award.

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 369 F.3d 91, 98 (2d Cir. 2004).  *See also Role Models America, Inc. v. Brownlee*, 353 F.3d 962, 975 (D.C. Cir. 2004). ("The government urges us to deny any recovery for computer research charges, but we decline to do so because such services presumably save money by making legal research more efficient."). The Wiles Declaration makes clear that Debevoise separately bills its clients for the expenses associated with online research services.  Accordingly, the Court will include the costs of Debevoise's computer-based legal research in its expense award.

As for the remainder of the listed expenses, the Fourth Circuit has stated:

> Litigation expenses such as supplemental secretarial costs, copying, telephone costs and necessary travel, are integrally related to the work of an attorney and the services for which outlays are made may play a significant role in the ultimate success of [complex] litigation . . . .

*Wheeler v. Durham City Bd. of Ed.*, 585 F.2d 618, 623-24 (4th Cir. 1978) (footnote omitted).  The Wiles Declaration establishes that Debevoise's hourly billing rates reflect overhead expenses such as rent, utilities, and general personnel costs, but that the listed expenses are considered "ancillary services" or out-of-pocket disbursements, both of which are typically billed to the client directly.  The Court finds that the majority of the expenses are reasonable and will include them in its award.  The Court also finds, however, that certain expenses cannot reasonably be charged to Defendants without further documentation.  As such, the Court will deduct from its award the following expenses:

| Charges and Disbursements | Amount |
|---------------------------|-----------|
| Lawyer Out-of-Pocket | $882.05 |
| Conference Room Catering | $1,006.58 |
| Lawyer OT Expense - Meals | $618.63 |
| Overtime Meal Expense | $45.00 |

Thus, the Court will deduct $2552.26 from the claimed amount of expenses.  This results in an award of $74,659.07 for litigation expenses.

-34-

**IV.   Conclusion**

For the foregoing reasons, the Court will award

Plaintiff with $303,175.67 in attorneys' fees and $74,659.07 in

litigation expenses.  An appropriate Order will issue.


August 22, 2006                    _____/s/_____
Alexandria, Virginia                     James C. Cacheris
                                   UNITED STATES DISTRICT COURT JUDGE